KENNETH LOONEY, JAMES A. TRIPP, AND KEW C. LOFTIS, TRUSTEES FOR THE CHURCH OF GOD, AND THE CHURCH OF GOD v. THE COMMUNITY BIBLE HOLINESS CHURCH

No. 907SC1001

(Filed 16 July 1991)

**Religious Societies and Corporations § 2.1 (NCI3d)— ownership and right to control church property—jury question**

In an action by plaintiff denominational church to determine the ownership and right to control local church property, the evidence presented a jury question as to whether the local church intended to establish a connectional relationship with the denominational church with respect to church property so as to give the denominational church the right to control such property where there was evidence tending to show that the local church's predecessor congregation affiliated with plaintiff denominational church in 1955 and remained so affiliated

until 1988, and the discipline of the denominational church manifests an implied assent of local churches to denominational control of local church property, but there was also evidence tending to show that, when the local church affiliated with the denominational church, the local property was deeded to trustees for the local church rather than to the denominational church or trustees for the denominational church, and that this pattern was followed in all property transactions during the entire period of affiliation.

**Am Jur 2d, Religious Societies § 42.**

APPEAL by plaintiffs from judgment entered 30 June 1990 in WILSON County Superior Court by *Judge I. Beverly Lake, Jr.* Heard in the Court of Appeals 10 April 1991.

Plaintiffs brought this action to determine the ownership and right to control certain church property situated in Wilson County. The individual plaintiffs, as trustees for the Church of God denomination, and plaintiff Church of God prayed that plaintiff Church of God be declared the owner of the property and that the defendant be enjoined from occupying and using the property.

The defendant Community Bible Holiness Church is the successor to the Community Church of God, which in turn was the successor to the Batts Chapel Free Will Baptist Holiness Church. At the time this action was brought defendant Community Bible Holiness Church was occupying and in control of the disputed property.

At trial, evidence was presented relating to the record title transactions affecting the church property and the relationship between defendant local church and the Church of God denomination.

The following issues were submitted to and answered by the jury:

ISSUE NO. 1:

Is the plaintiff Church of God a connectional church organization?

ANSWER: Yes.

LOONEY v. COMMUNITY BIBLE HOLINESS CHURCH

[103 N.C. App. 469 (1991)]

ISSUE NO. 2:

Was the defendant local church prior to August 1988 in a connectional relationship with the plaintiff parent church with respect to property matters?

ANSWER: No.

Upon the jury's verdict, the trial court entered judgment for defendant, declaring it to be the sole owner of the disputed church property.

Plaintiffs appeal from that judgment.

*Leon A. Lucas for plaintiffs-appellants.*

*Bobby G. Abrams for defendant-appellee.*

WELLS, Judge.

The fundamental question presented in this case is whether the defendant local church gave up its right to own and control the local church property by affiliating with the Church of God denomination. In their first assignment of error, plaintiffs assert that the answer to that question is "yes" and therefore the trial court erred in not granting their motion at trial for a directed verdict or for judgment notwithstanding the verdict.

As our Supreme Court has noted, it is rarely appropriate to grant a directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50 of the Rules of Civil Procedure for a party bearing the burden of proof. *See Bank v. Burnette,* 297 N.C. 524, 256 S.E.2d 388 (1979), and cases and authorities cited and discussed therein. In *Burnette,* the Court's resolution of this question focused on the proposition that the credibility of evidence will usually be left to the jury to determine. But the Court recognized that even when credibility of the evidence may not be questioned, conflicting inferences arising on the evidence must be resolved by the jury. We perceive that the case now before us presents more of a conflicting inference than a credibility question.

Plaintiff does not suggest, nor do we perceive, that there is any real dispute as to the credibility of the witnesses in this case nor as to the authenticity of the documentary evidence. As our discussion will reflect, the essential nature of the question to be decided is whether, as plaintiffs contend, the defendant local church

by "impliedly" assenting to the "minutes" or discipline of the plaintiff Church of God denomination, gave control of the local church property to the plaintiff Church of God as a matter of law. The evidence pertinent to this question presented at trial is as follows.

Following a six-week tent revival in 1949 near Highway 42 in Wilson County, members of the revival's congregation continued to meet in the home of Leona Ellis and her husband. Combining their income and labor, the group began building their own church in 1949 and completed it in 1950. The congregation organized and named itself Batts Chapel Free Will Baptist Holiness Church. On 15 April 1950 Cooper D. Batts conveyed to the Batts Chapel Free Will Baptist Holiness Church trustees, Herman Sutton, Leona Ellis and Sissie Harris, in fee simple, the property on which the church is located.

In 1955, the Batts Chapel congregation began to affiliate themselves with the Church of God denomination for the purposes of fellowship. On 18 August 1955, the Batts Chapel Free Will Baptist Holiness Church trustees conveyed the church property to Wiley Jackson, Leona E. Ellis and Winifred Harris as trustees for the Community Church of God.

On 13 November 1972 Wallace L. Whitley and his wife, Onnie W. Whitley, conveyed a lot adjoining the church property to the Community Chapel Church of God trustees, Wiley Jackson, Marvin Howell and Jimmy Thompson. During 1972 and 1973 the congregation built a new church sanctuary. This sanctuary construction was partly financed with a $22,500.00 loan from Citizen Savings and Loan Association secured by the church property. The congregation financed further improvements to the church with loans from various local banks, all secured by the church property.

In 1988 the Church of God denomination altered its policy statement regarding how its members should live their daily personal lives. As a result of this alteration in the denomination's policy statement, the Community Church of God disassociated themselves from the Church of God and re-chartered their church as The Community Bible Holiness Church. In response, the State Overseer for the Church of God denomination, B. L. Kelly, dismissed the Community Church of God local board of trustees and appointed a successor state board of trustees, plaintiffs Kenneth Looney, James A. Tripp and W. C. Loftis.

On 30 August 1988 and 28 October 1988 the State Church of God trustees executed deeds conveying to themselves title to the real property occupied by the Community Church of God. On 31 August 1988, the State Overseer revoked the ordination of W. E. Wilson, minister of the Community Church of God. Despite these changes, W. E. Wilson continued to preach and members loyal to the Community Church of God continued to occupy the church. Members of the congregation loyal to the Church of God denomination began worshipping elsewhere.

The Church of God General Assembly Minutes provide that a local board of trustees shall hold title to local church property and that "all such property shall be used, managed, and controlled for the sole and exclusive use and benefit of the Church of God." On this evidence, we proceed to our analysis of applicable law.

While the civil courts have no jurisdiction over and no concern with purely ecclesiastical questions and controversies due to constitutional guarantees of freedom of religious profession and worship, the courts do have jurisdiction to determine property rights which are involved in, or arise from, a church controversy. *See Atkins v. Walker*, 284 N.C. 306, 200 S.E.2d 641 (1973).

Our Supreme Court distinguished connectional or hierarchical churches from congregational churches in *Simmons v. Allison*, 118 N.C. 763, 24 S.E. 716 (1896). Connectional churches are governed by large bodies and individual congregations bear the same relation to the governing body as counties bear to the State. *Id.* Congregational churches are independent republics, governed by the majority of its members and subject to control or supervision by no higher authority. *Id.* Although congregational churches often associate together for mission purposes, these associations are strictly voluntary and have no governmental authority over the individual congregations. *Id.*

As a general rule the parent body of a connectional church has the right to control the property of local affiliated churches, and, as a corollary, this right will be enforced in civil courts. *A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C. App. 391, 308 S.E.2d 73 (1983), *cert. denied*, 310 N.C. 308, 312 S.E.2d 649 (1984). However, a local church may have retained sufficient independence from the general church so that it reserved its right to withdraw at any time, and, presumably take along with it whatever

property it independently owned prior to and retained during its limited affiliation with the general church. *Id.*

Viewing the evidence in the light most favorable to defendant non-movant, three central points appear to form the decisive framework. (1) Defendant's predecessor congregation or church affiliated with the plaintiff denominational church in 1955 and remained so affiliated until 1988. (2) The discipline of the denominational church manifest an implied assent of local churches to denominational control of local church property. This evidence, if not contradicted, would make the plaintiffs' case. (3) The third point is the nature of the property transactions themselves. When the defendant local church affiliated with the plaintiff denominational church, the property was deeded to trustees of, or for, the local church, not to the denominational church or to trustees of, or for, the denominational church. This pattern was followed in all property transactions during the entire period of affiliation. Thus this evidence created a jury question as to whether *as to church property* the local church intended to establish a connectional relationship with the denominational church. *A.M.E. Zion Church, supra; Cf. Wyche v. Alexander,* 15 N.C. App. 130, 189 S.E.2d 608, *cert. denied,* 281 N.C. 764, 191 S.E.2d 361 (1972) (local connectional church property deeded to trustees for denominational church).

For the reasons stated, we therefore hold that the trial court properly denied plaintiffs' motion for a directed verdict and for judgment notwithstanding the verdict.

We have carefully reviewed plaintiffs' other assignments of error and find them to be without merit.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.